# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES HARRIS**, *et al.*,<br><br>             Plaintiffs,<br><br>      v.<br><br>**MURIEL ELIZABETH BOWSER**, *in her official capacity as Mayor of the District of Columbia*, *et al.*,<br><br>             Defendants. | Case No. 1:19-cv-00886 (TNM) |

## **MEMORANDUM OPINION**

This case arises out of James Harris's arrest after a bar fight. He and his spouse, David Harris (collectively, the "Harrises"), have sued various entities and individuals under 42 U.S.C. § 1983 and for malicious prosecution and defamation. Defendants Mayor Muriel Bowser, the Metropolitan Police Department ("MPD"), MPD Chief Peter Newsham, and the District of Columbia have moved to dismiss the Harrises' Complaint. So too have Federal Defendants United States Attorney Jessie K. Liu and the Department of Justice. For the following reasons, the Court will grant both motions, and the Court also will dismiss the Complaint as to the remaining, non-moving Defendants.

### I.     BACKGROUND

One evening in February 2018, James and David Harris ("Mr. Harris" and "Dr. Harris," respectively) attended a performance at Town Danceboutique ("Town") in Washington, D.C.

Compl. ¶ 19, ECF No. 1.[1]  They were standing near the stage when a group of men behind them complained that Mr. Harris was blocking their view.  *Id.* ¶¶ 20–21.  When Mr. Harris would not give up his spot, the group started to antagonize him—"hitting him in the back."  *Id.* ¶¶ 20–23.

Mr. Harris asked the group to stop and warned that "it was not a good idea[] to touch him."  *Id.* ¶ 24.  But the group did not stop, and one of them asked Mr. Harris, "What are you going to do about it?"  *Id.*  Mr. Harris "stuck the guy back," and a fight broke out.  *Id.*  Eventually, Dr. Harris de-escalated the situation, separating Mr. Harris from the group.  ¶ 27.  Douglas Scott Meyer, Town's Operating Manager, was injured during the altercation.  *Id.* ¶¶ 27–28.

Mr. Meyer called the police while Mr. Harris was escorted out of the bar.  *Id.* ¶¶ 29–30.  When MPD officers arrived, most of the individuals involved in the tussle were gone.  *Id.* ¶ 31.  The officers asked the Harrises for identification, and one of the officers allegedly took Dr. Harris's military identification card and never returned it.  *Id.* ¶ 32–35.  Upset about his missing ID and the officers' unwillingness to provide their business cards, Dr. Harris called 9-1-1 to request that a supervisor come to the scene.  *Id.* ¶¶ 36–37.  Two officers from MPD's LGBT division arrived, introduced themselves, handed him their business cards, and took Dr. Harris's information.  *Id.* ¶¶ 41–42.

Meanwhile, Officer Maxwell Poupart handcuffed and detained Mr. Harris.  *Id.* ¶ 38.  Dr. Harris tried to intervene, but the officers told him to stand back.  *Id.* ¶ 39.  Officer Korey Marable interviewed both Mr. Meyer and Mr. Harris about the incident.  *Id.* ¶¶ 43–44.  Mr. Meyer complained that Mr. Harris had struck him in the face.  *See id.* ¶¶ 44–45, 49.  The officers

---

[1] Because the Court must accept all factual allegations in the Complaint as true when ruling on a motion to dismiss, the facts here come from the Complaint.  *See Braxton v. First Transit,* 322 F. Supp. 3d 110, 116-17 (D.D.C. 2018).  All page citations are to the page numbers generated by the Court's CM/ECF system.

arrested Mr. Harris for simple assault. *Id.* ¶¶ 43–45. He was transported without a seat belt and in a patrol wagon that was too small for his 6'5" frame. *Id.* ¶¶ 67-68. Mr. Harris was later acquitted at trial. *Id.* ¶ 99.

The Harrises sued, seeking relief under 42 U.S.C. § 1983 for violations of their rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution. *Id.* ¶¶ 52–90. They also asserted claims for malicious prosecution and defamation. *Id.* ¶¶ 91–102.

The Defendants fall into three categories. The "District Defendants" include Mayor Bowser, the MPD, Chief Newsham, several MPD officers in their official capacities, and the District. The "Federal Defendants" include Ms. Liu, in her official capacity as the U.S. Attorney for the District of Columbia, and the Department of Justice. Finally, the "Remaining Defendants" include Mr. Meyer; The Art of Lounge, LLC; and Officer Poupart in his individual capacity. The District Defendants and the Federal Defendants have moved to dismiss the Harrises' Complaint. District Defs.' Mem. in Supp. of Mot. to Dismiss ("District Defs.' Mem."), ECF No 4-1; Fed. Defs.' Mot. to Dismiss ("Fed. Defs.' Mot."), ECF No. 9. For the reasons given below, the Court will grant both motions and also dismiss the Complaint against the Remaining Defendants.

## II. LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "assume [the] veracity" of "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and must "grant [the] plaintiff the benefit of all inferences that can be derived

from the facts alleged," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted).

Allegations in a *pro se* complaint are held to a less stringent standards than formal pleadings drafted by lawyers. *Braxton v. First. Transit,* 322 F. Supp. 3d 110, 116 (D.D.C. 2018). But the Court need not accept "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Because federal courts are courts of limited jurisdiction, they "presume[] that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). To survive a Rule 12(b)(1) motion, a plaintiff must establish that the court has jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Like with a motion under 12(b)(6), "the court must treat the plaintiff's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016). But unlike when evaluating a Rule 12(b)(6) motion, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). If the Court finds that it lacks jurisdiction, it must dismiss the claim or action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

### III. ANALYSIS

*A. The Harrises' claims against Mayor Bowser, Chief Newsham, and the MPD officers in their official capacities are duplicative of their claims against the District.*

The Harrises sued Mayor Bowser and Chief Newsham only in their official capacities. *See* Compl. at 1. "When sued in their official capacities, government officials are not personally liable for damages," and "[a] section 1983 suit for damages against municipal officials in their official capacities is thus equivalent to a suit against the municipality itself." *Atchinson v.*

*District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996). "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts routinely dismiss claims against the officials to conserve judicial resources when the entity itself is also sued." *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 57 n.3 (D.D.C. 2011) (cleaned up).

Here, the District of Columbia is a named defendant. Compl. at 1. Thus, the Harrises' claims against Mayor Bowser and Chief Newsham will be dismissed as duplicative of their claims against the District. *See Cotton v. District of Columbia*, 421 F. Supp. 2d 83, 86 (D.D.C. 2006). So too for the Harrises' claims against the MPD officers sued only in their official capacity. *Id.*[2] Thus, the claims against the MPD officers in their official capacity will be dismissed as duplicative of the claims against the District.

B. *The MPD is* non sui juris.

The Plaintiffs sued the MPD. *See* Compl. ¶ 7. But because the MPD is a sub-agency of the District government, it cannot be sued in its own name. *See Hunt v. District of Columbia*, 2002 WL 1997987 at *1 (D.C. Cir. Aug. 29, 2002) (per curium) ("The district court correctly concluded that appellee Metropolitan Police Department is *non sui juris*."). "[I]t is well-settled that a department or agency of the District of Columbia cannot sue or be sued in its own name in the absence of a statutory provision to that effect." *Whitehead v. D.C. Child Support Servs. Div.*, 892 F. Supp. 2d 315, 319 (D.D.C. 2012) (citing *Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, 5 (D.D.C. 2000) (collecting cases)). The Harrises do not argue otherwise. *See generally* Pl.'s

---

[2] It is not entirely clear whether the District Defendants' Motion to Dismiss also applies to these MPD officers. *See generally* District Defs.' Mem. But, in any event, "[w]here, as here, the basis for dismissal is applicable to another defendant, it is proper to make the holding applicable to the non-moving party as well." *Barnes v. District of Columbia*, 2005 WL 1241132, at *3 (D.D.C. May 24, 2005).

Mem. Opp'n to District Defs.' Mot. to Dismiss ("Pls.' Opp'n to District Defs."), ECF No. 7. The Court will therefore dismiss the Complaint against the MPD.

  C. *The Plaintiffs have failed to state a claim against the District under Section 1983.*

The Plaintiffs have failed to state a claim against the District under Counts I (False Arrest),³ II (Excessive Force), III (Due Process/Brady Violation), IV (Conspiracy to Commit Constitutional Violations), and V (Failure to Intervene). To hold the District liable under Section 1983, the Harrises must show that the alleged constitutional violation occurred through "execution of a government's policy or custom." *Monell v. United States*, 436 U.S. 658, 694 (1978). That is, a municipal policy, practice, or custom must be the "moving force" behind the alleged constitutional injury. *Id.* at 694–95.

Here, the District argues that the Harrises have "fail[ed] to identify any specific custom or policy or the source of any custom or policy that would entitle them to relief" under Section 1983. District Defs.' Mem. at 16 (citing *Collington v. Dist. of Columbia*, 828 F. Supp. 2d 210, 215 (D.D.C. 2011)). They also argue that Count I of the Complaint is a not a cause of action because Section 1983 is an improper vehicle to pursue a claim under the D.C. Human Rights Act. *Id.* at 12–13 (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). More, the District argues that the Fourteenth Amendment does not apply to it. *Id.* at 16–17 (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)).

Again, the Harrises do not argue otherwise. *See generally* Pls.' Opp'n to District Defs. It is well understood in this Circuit that "if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014). Even if the

---
³ Count I alleges that the MPD officers falsely arrested Mr. Harris because he is black in violation of the D.C. Human Rights Act. *See* Compl. ¶ 55.

6

Harrises had not conceded the District's arguments, the Court agrees that they have failed to allege any custom or policy that was the "moving force" behind their alleged constitutional injuries.

True, the Plaintiffs allude to MPD policies in Counts I and II. *See* Compl. ¶¶ 54–56, 65–68. But the Plaintiffs do not allege that these policies caused their injuries. *Id.* Indeed, they argue the opposite: they allege that the officers' failure to abide by MPD policies caused their injuries. *Id.* But "[t]o hold a municipality accountable, the plaintiff must establish that the official policy or custom *itself* is 'the moving force of the constitutional violation.'" *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986) (emphasis added) (quoting *Monell*, 436 U.S. 694). The Harrises have not done so here. What is more, the District is correct that the D.C. Human Rights Act is not a federal statute, and Section 1983 imposes liability only "for violations of rights protected by the Constitution [and federal law]." *Baker*, 443 U.S. at 144 n.3. The Court, therefore, will dismiss the Harrises' Section 1983 claims (Counts I-V) against the District.

   D. *The Harrises did not comply with D.C. Code § 12-309.*

The Harrises also sue the District for malicious prosecution (Count VI) and defamation under D.C. Code § 31-2231.05 (Count VII). To bring a tort action against the District for unliquidated damages, plaintiffs must satisfy the mandatory notice requirement of D.C. Code § 12-309. *See Blocker-Burnette v. District of Columbia*, 730 F. Supp. 2d 200, 203 (D.D.C. 2010). Section 12-309 provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the

> Metropolitan Police Department, in regular course of duty, is a
> sufficient notice under this section.

The Harrises did not comply with these requirements. MPD arrested Mr. Harris on February 10, 2018. Compl. ¶ 19. But the Harrises filed notice of their claims to the Mayor over a year later. *See* Compl. ¶¶ 15–18. Instead, they allege that they timely filed complaints with the District's Office of Police Complaints and MPD's Internal Affairs Office, just days after the arrest. *See id.* But Section 12-309, by its terms, does not contemplate that complaints to these subordinate agencies is enough to comply with the notice requirement. More, the District argues that these subordinate agencies are not statutorily authorized to accept notice on the Mayor's behalf. *See* District Defs.' Mem at 10. "Only the Office of Risk Management is authorized to accept [Section 12-309 notice] on behalf of the Mayor." *See* Office of Attorney General for District of Columbia, *File a Claim Against the District*, https://oag.dc.gov/about-oag/file-claim-against-district (last visited Aug. 19, 2019).[4] And Section 12-309 "is to be strictly construed because it is a departure from the common law concept of sovereign immunity." *Doe by Fein v. District of Columbia*, 93 F.3d 861, 872 (D.C. Cir. 1996).

Instead of disputing the District's arguments head on, the Harrises raise two counterarguments. Neither is persuasive.

First, they argue that equitable tolling should apply here. Pls.' Opp'n to District Defs. at 2–3. The Plaintiffs, who are now proceeding *pro se*, had representation earlier, and they complain that their counsel did not take all necessary steps to comply with Section 12-309. *Id.* Perhaps. But "District of Columbia law does not recognize or permit an equitable tolling exception to the six-month notification limit imposed by section 12-309." *Doe by Fein v.*

---

[4] "Courts in this jurisdiction have frequently taken judicial notice of information on official public websites of government agencies." *Pharm. Research & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).

*District of Columbia*, 697 A.2d 23, 31 (D.C. 1997); *see also Harvey v. District of Columbia*, 798 F.3d 1042, 1054 (D.C. Cir. 2015). Nor does the discovery rule apply to Section 12-309's notice requirement. *See District of Columbia v. Dunmore*, 662 A.2d 1356, 1359–61 (D.C. 1995). So their prior attorney's alleged deficiencies will not save them here.

Second, the Harrises argue that the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3936, tolls Section 12-309's six-month deadline, so the complaint they submitted to the Mayor's Office in March 2019 satisfied the notice requirement. Pls.' Opp'n to District Defs. at 1. The District concedes that case law supports the position that the SCRA tolls Section 12-309's deadline. District Defs.' Reply in Supp. of Mot. to Dismiss at 2, ECF No. 8. Even so, the SCRA does not save the Harrises' tort claims.

"Tolling under the SCRA applies only to periods during which plaintiff served on full-time, active duty military service." *Cage v. McHugh*, 963 F. Supp. 2d 29, 32 (D.D.C. 2013). The Complaint alleges only that Dr. Harris is an active duty member of the armed forces and was carrying a military identification card on the night of the incident. *See* Compl. ¶¶ 1, 33.[5] Assuming *arguendo* that allegation is enough to show that Dr. Harris was on full-time, active duty military service and he thus has a right to tolling under the SCRA, Mr. Harris does not. The Complaint makes no suggestion that Mr. Harris was ever on full-time, active duty military service. *See generally* Compl. Instead, the Harrises rely on Mr. Harris's relationship with Dr. Harris as grounds for his entitlement to tolling under the SCRA.

But the SCRA applies only to members on active duty military service, not to spouses. *See Card v. American Brands Corp.*, 401 F. Supp. 1186, 1187 (S.D.N.Y. 1975); *Wanner v. Glen Allen Corp.*, 373 F. Supp. 983, 986 (D. Vt. 1974). So the District did not receive timely notice of

---

[5] The only Count applicable to Dr. Harris is the defamation claim, Count VII.

Mr. Harris's claims for malicious prosecution and defamation. And even if the SCRA saves Dr. Harris's defamation claim from dismissal for failure to comply with Section 12-309's notice requirement, that claim fails for other reasons, *see infra* Section E.

Nor does the police report from the incident satisfy Section 12-309's notice requirement.[6] *See* Police Report, ECF No. 4-3. Section 12-309 allows "[a] report in writing by the Metropolitan Police Department, in regular course of duty" to satisfy the notice requirement. But the mere "existence of a police report does not necessarily mean that the District has received the type of actual notice [Section] 12-309 contemplates." *Allen v. District of Columbia*, 533 A.2d 1259, 1262 (D.C. 1987). "This is especially true where, as here, a plaintiff's civil case asserts claims such as false arrest or malicious prosecution." *McCain v. District of Columbia*, 70 F. Supp. 3d 525, 531 (D.D.C. 2014). Indeed, "a police report of an arrest is presumptively devoid of any notice of a potential claim of injury or damage from false arrest, assault and battery, or negligence." *Allen*, 533 A.2d at 1263.

For a police report to be "sufficient notice" under local law, it "must contain the same information that is required in any other notice given under the statute." *Doe by Fein*, 697 A.2d at 27 (citation omitted). That is, it "must contain information as to time, place, cause and circumstances of injury or damage with at least the same degree of specificity required of a written notice." *Washington v. District of Columbia*, 429 A.2d 1362, 1367 n.17 (D.C. 1981). So "a police report must do more than merely report the happening of an event or accident; it must also report—give notice of—any then apparent injury . . . which later forms the basis of a claim."

---

[6] The District has attached a copy of the police report to its Motion to Dismiss. Police Report, ECF No. 4-3. The Harrises refer to the police report in their Complaint, *see* Compl. ¶¶ 82, 101, and the report is central to whether the Harrises gave proper notice under D. C. Code 12-309, so the Court may consider the police report without converting the District's motion to dismiss into a motion for summary judgment. *See Compton v. Alpha Kappa Sorority, Inc.*, 64 F. Supp. 3d 1, 12 (D.D.C. 2014).

*Allen*, 533 A.2d at 1263 (citation omitted). The proper inquiry is whether the District "should have anticipated, as a consequence of receiving the police reports, that a complaint by [the] plaintiff would be forthcoming." *Mazloum v. D.C. Metro. Police Dep't*, 522 F. Supp. 2d 24, 29 (D.D.C. 2007) (citation omitted).

The police report of Mr. Harris's arrest did not alert the District to the prospect of litigation. The report states only that after two people at the scene told officers that Mr. Harris had "struck [them] in the face," the officers arrested Mr. Harris for simple assault and took him to the police station for processing. Police Report at 3. A report that officers lawfully arrested a suspect identified by two assault victims is unremarkable. The report simply does not "recite[] facts from which it could be reasonably anticipated that a claim against the District might arise" for defamation or malicious prosecution. *Pitts v. District of Columbia*, 391 A.2d 803, 809 (D.C. 1978). Nor have the Harrises overcome the presumption "a police report of an arrest is . . . devoid of any notice of a potential claim of injury or damage from false arrest, assault and battery, or negligence." *Allen*, 533 A.2d at 1263.

The Harrises, however, argue that the report reveals that Mr. Harris was injured, and they allege that they complained to the officers about Mr. Harris's arrest. *See* Pls.' Opp'n to District Defs at 4; Compl. ¶¶ 37, 39, 45. Perhaps. But they still have not shown that they have satisfied Section 12-309's notice requirement. First, nothing in the report conveys that MPD officers—rather than the bar fight—caused Mr. Harris's injuries. The Court's inquiry "must focus on whether the police reports adequately described *the District's role* in [the plaintiff's] injuries." *Doe by Fein*, 697 A.2d at 27 (emphasis in original).

Second, Mr. Harris's physical injuries detailed in the report do not "form the basis of" his malicious prosecution or defamation claims. That a person who had been in a bar fight suffered

11

apparently minor injuries does little to show that the District had a "reasonable basis for anticipating legal action"—especially for malicious prosecution and defamation—"as a consequence." *Washington*, 429 A.2d at 1366.

Finally, the Court's inquiry must focus on the written police report itself, not on the Harrises' complaints to officers on the night of Mr. Harris's arrest. *See, e.g.*, *Patrick v. District of Columbia*, 126 F. Supp. 3d 132, 138 (D.D.C. 2015) (evaluating the police report "on its face"); *Doe in Fein*, 697 A.2d at 28 n.8 (declining to consider complaints made to police that were not in the police report). Similarly, to the extent the Harrises wish to rely on complaints made by Dr. Harris to the LGBT liaison officers, there is no allegation that they generated a written report of that interaction. The arrest report makes no mention of that conversation.

"Section 12-309 makes clear that police reports are the only acceptable alternatives to a formal notice. The court is not free to go beyond the express language of the statute." *Doe in Fein*, 697 A.2d at 28  Thus, because the police report does not set forth sufficient details providing "a reasonable basis for anticipating legal action as a consequence" of Mr. Harris's arrest, the Court holds that it does not meet the notice requirement of D.C. Code § 12–309. *See Washington*, 429 A.2d at 1366.

Judge Contreras reached a similar conclusion in *Patrick v. District of Columbia*. In that case, the plaintiff sued for false imprisonment, assault and battery, and negligence after he was injured by officers during an arrest. *Patrick*, 126 F. Supp. 3d at 134–35. The officers had stopped him on the suspicion that he was dealing drugs. *Id.* at 134. And when the officers felt a handgun during a pat-down, a scuffle ensued. *Id.* at 134–35.

Looking only at the face of the police report, the court found that while the report did contain details consistent with officers injuring the plaintiff during the arrest, the District could

not have reasonably anticipated legal action because of the altercation. *See id.* at 137–38. "Instead, the Police Report's version of events suggests that the Officers' actions were legally justified because the Officers had reasonable suspicion that Mr. Patrick had weapons on his person." *Id.* at 137. Indeed, "[S]ection 12–309's police report exception cannot be read so broadly as to encompass a police report that, on its face, indicates that the District employees acted appropriately." *Id.* at 138.

So too here. And unlike in *Patrick,* the Harris arrest report does not even suggest that the police injured him, much less that the officers' actions were not legally justified. The report simply does not satisfy Section 12-309's stringent notice requirements.

E. *In any event, the Harrises have failed to state a claim for defamation under D.C. Code § 31-2231.05.*

The Harrises' Count VII alleges defamation under the District's Unfair Insurance Trade Practices statute, D.C. Code § 31-2231.01, *et seq.* Compl. ¶¶ 100–02. That section provides:

> No person shall make, publish, disseminate, or circulate, directly or indirectly, or aid, abet, or encourage the making, publishing, disseminating or circulating, of an oral or written statement or a pamphlet, circular, article, or literature, which is false with respect to, maliciously critical of, or derogatory to*, the financial condition of an insurer* and which is calculated to injure the insurer.

D.C. Code § 31-2231.05 (emphasis added). But the Harrises fail to state a claim under this section.

First, nowhere does the Complaint allege that either plaintiff is an "insurer." *See generally* Compl. Nor do they allege that any defendant made a "statement . . . which is false with respect to, maliciously critical of, or derogatory to, *the financial condition*" of the Harrises. *Id*. More, the Unfair Insurance Trade Practices statute provides no private right of action. *See*

D.C. Code §31-2231.02(a). Instead, the statute can be enforced only through an administrative process. The statute provides:

> This chapter shall be construed to permit an administrative remedy only, and nothing in this chapter shall be construed to create or imply a private cause of action for a violation of this chapter.

*Id.* Thus, the Harrises' attempt to bring a defamation claim under § 31-2231.05 is improper.

The District raised all these arguments in its Motion to Dismiss. *See* District Defs.' Mem at 13–14. The Harrises' opposition, however, did not address the District's arguments. *See generally* Pls.' Opp'n to District Defs. "[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." *Wannall*, 775 F.3d at 428. Thus, the Court will dismiss Count VII against all Defendants.

 F. *Sovereign immunity bars the Harrises' claims against the Department of Justice and Ms. Liu in her official capacity.*

The Department of Justice is immune from suit on the Harrises' Section 1983 claims. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "This immunity extends to federal agencies, including the Department of Justice." *Stone v. HUD*, 859 F. Supp. 2d 59, 63 (D.D.C. 2012) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). This is true in the context of Section 1983 suits, too. *See Morgan v. U.S. Parole Comm'n*, 304 F. Supp. 3d 240, 247–48 (D.D.C. 2016). The Harrises have pointed to no clear waiver of this immunity as against the Department of Justice. *See generally* Pls.' Opp'n to Fed. Defs. Mot. to Dismiss ("Pls.' Opp'n to Fed. Defs."), ECF No. 12. Thus, sovereign immunity bars the Harrises' Section 1983 claims against the Department.

So too for the Harrises' claims against U.S. Attorney Jessie Liu. The Harrises sued Ms. Liu only in her official capacity. Compl. ¶ 10. A suit against a federal government employee in her "official capacity" qualifies as a suit against the United States. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). So Ms. Liu is immune from the Harrises' Section 1983 claims.

In any event, as U.S. Attorney for the District of Columbia, Ms. Liu is a federal official. *See* 28 U.S.C. §§ 541–43 (federal statutes establishing the authority for U.S. Attorneys and their assistants). "Actions of federal officers are outside of [Section 1983's] proscriptions." *McCord v. Bailey*, 636 F.2d 606 (1980). Indeed, "Section 1983 does not apply to federal officials acting under color of federal law." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005). Thus, Counts III-V of the Plaintiffs' Complaint will be dismissed against Ms. Liu and the Department of Justice.[7]

Sovereign immunity also bars the Harrises' tort claims for malicious prosecution (Count VI) and defamation (Count VII). The Federal Tort Claim Act ("FTCA") "waive[s] the sovereign immunity of the United States for certain torts committed by federal employees." *Meyer*, 510 U.S. at 475 (citing 28 U.S.C. § 1346(b)). The United States is the only proper defendant in actions brought under the FTCA. *See Allen v. Brown*, 185 F. Supp. 3d 1, 10–11 (D.D.C. 2016). But the United States is not a defendant here. *See* Compl. at 1–2. That failure requires dismissal. *See Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 14–17 (D.D.C. 2015) ("In this case, Mr. Johnson has failed to name the United States as a defendant. For that reason, his claims must be dismissed for failure to establish a waiver of sovereign immunity under the FTCA."). The Harrises appear to acknowledge that their failure to include the United States is fatal to their claims, *see* Pls.' Opp'n to Fed. Defs at 7, but they have not sought leave to amend

---

[7] Counts I and II do not involve Ms. Liu and the Department of Justice.

their Complaint to add the United States as a defendant. Thus, Counts VI and VII will be dismissed as against the Federal Defendants.

G. *The Harrises have not shown proper service to the Remaining Defendants.*

The Harrises filed their Complaint on March 26, 2019. *See* Compl. Under Federal Rule of Civil Procedure 4(m), a plaintiff must serve a defendant within 90 days after the complaint is filed. The Court warned the Harrises about their responsibility under Rule 4(m) and Local Rule 5.3. 06/06/19 Min. Order. And the Court directed them to "file proof of perfected service on or before June 27, 2019." *Id.* The Court warned that it would dismiss the Complaint against specific defendants if the Harrises failed to prove service. *Id.*

As of today, the Harrises have not proved proper service for the Remaining Defendants. Federal Rule of Civil Procedure 4(e)(1), through incorporation of the District's service rules, allows the Harrises to serve defendants by certified mail. *See* D.C. Sup. Ct. R. 4(c)(3). In response to the Court's Order, the Plaintiffs submitted photographs of mailings sent to the Remaining Defendants. *See* Return of Service/Affidavit, ECF No. 11. The filing also includes an Affidavit of Service signed by Dr. Harris. *Id.* at 24.

But to prove service by certified mail, "the return must be accompanied by the signed receipt." D.C. Sup. Ct. R. 4 (*l*)(1)(b). The Harrises have filed no signed return receipt for the Remaining Defendants. Thus, the Harrises have not complied with the Court's Order to establish proper service for those defendants. The Court will therefore dismiss the Complaint as to the Remaining Defendants.

## IV. CONCLUSION

For these reasons, the District Defendants' Motion to Dismiss will be granted, the Federal Defendants' Motion to Dismiss will be granted, and the Court will dismiss the Complaint against the Remaining Defendants. A separate Order will issue.

Dated: August 19, 2019                              TREVOR N. McFADDEN, U.S.D.J.